UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| | ) | |
| AMY TUTEUR, M.D., | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 13-cv-10159-RGS |
| | ) | |
| GINA CROSLEY-CORCORAN, | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(2)**

**Introduction**

The Plaintiff in this action, Amy Tuteur, is a bully.

She is, to be sure, a modern-day bully; a "cyber bully," who spews her venom over the Internet, rather than kicking sand on a playground, but she is a bully nonetheless.

Ms. Tuteur, a former physician who is no longer licensed to practice medicine (and yet who identifies herself as an obstetrician gynecologist on her websites), runs a number of blogs, including one entitled "The Skeptical OB," where she is something of a niche bully.  Ms. Tuteur searches the Internet for first-person accounts from grieving mothers whose newborn children died during home births; excerpts large portions of their stories on her blog without permission; and intersperses these excerpts with ridicule and derision.  A few examples of Ms. Tuteur's masterpieces include blog entries entitled: "Yes, it is your fault that your baby died at homebirth," "Actually you did lose your uterus because you chose homebirth," "Yes the baby died, but my homebirth midwife was awesome," and "It was an awesome experience … too bad the baby died."[1]  *See* **Exhibits 1-4**, respectively.

---

[1] Other news outlets have begun to question and report on Ms. Tuteur's bullying tactics.  *See, e.g.,* "How to Scare Women," by Jennifer Block, writing in *Slate Magazine*, July 3, 2012 and "Fierce Views Of Anti-Home-Birth

This lawsuit represents another form of Ms. Tuteur's bullying.  The Defendant in this action, Gina Crosley-Corcoran, is a mother of three young children, a graduate student, a practicing doula,[2] and (most importantly for the purposes of this motion) a resident of Illinois.  A proponent of parents' right to choose home birth, Ms. Crosley-Corcoran has often found herself the target of Ms. Tuteur's ire.  When Ms. Tuteur, without authorization, used on her blog a photograph of Ms. Crosley-Corcoran taken from Ms. Crosley-Corcoran's blog, Ms. Crosley-Corcoran's attorney sent Ms. Tuteur a cease-and-desist letter informing Ms. Tuteur that she was infringing on Ms. Crosley-Corcoran's intellectual property rights.  When Ms. Tuteur refused to remove the photograph from her blog, Ms. Crosley-Corcoran sent takedown notices to the hosts of Ms. Tuteur's blogs, pursuant to the provisions of the Digital Millennium Copyright Act ("DMCA").  As a result, Ms. Tuteur had to switch hosting providers (in order to continue improperly using Ms. Crosley-Corcoran's photo on her blog).

Upset that someone had stood up to her, Ms. Tuteur initiated the present lawsuit – not in Illinois – but a thousand miles away in a state where Ms. Crosley-Corcoran has no connections and has never even visited.  It is yet another attempt at intimidation.  Pursuant to Fed. R. Civ. P. 12(b)(2),[3] Ms. Crosley-Corcoran seeks the dismissal of the present complaint.

## Facts

The Plaintiff, Amy Tuteur ("Ms. Tuteur"), is a Massachusetts resident and a blogger who

---

Activist Questioned In Slate," by Rachael Zimmerman at WBUR's CommonHealth, July 10, 2012, attached hereto, respectively, as **Exhibits 5 and 6.**

[2] A "doula" is a birth coach often hired by expectant parents to assist in the birth of a child.  Doulas are often used by parents wishing to have home births.  *See, e.g,* http://en.wikipedia.org/wiki/Doula.

[3] Although this present motion is limited to issues of personal jurisdiction, Ms. Crosley-Corcoran could as easily move for the dismissal of the present complaint under Fed. R. Civ. P. 12(b)(6).  In addition to the fact that, as a matter of law, Ms. Crosley-Corcoran's issuance of  the takedown notices were proper under the DMCA, the vast majority of the allegations contained in the complaint are based on the alleged content of confidential settlement negotiations.  Even if they had been accurately reported – which they most assuredly were not - these confidential and privileged communications cannot form the basis of Ms. Tuteur's complaint.  *See* Affidavit of Jake Marcus, Esq., attached hereto as **Exhibit 7.**  The overall weakness of the allegations (from both a legal and factual perspective) are additional evidence that the present action was brought for an improper ulterior motive.

operates, among others, blogs and websites entitled "The Skeptical OB," "Hurt By Home Birth," "Home Birth Death Statistics" and "Ask Dr. Amy."[4]  The Defendant, Gina Crosley-Corcoran ("Ms. Crosley-Corcoran"), is a mother of three young children, a graduate student, a doula, and a writer.  *See* Affidavit of Gina Crosley-Corcoran, attached hereto as **Exhibit 10**.  Ms. Crosley-Corcoran is a full-time resident of Illinois, where she lives with her family.  *Id.*

Ms. Crosley-Corcoran has no connections whatsoever to the Commonwealth of Massachusetts.  *Id.*  Ms. Crosley-Corcoran does not live in Massachusetts, does not own property in Massachusetts, has no bank account in Massachusetts, does not pay taxes in Massachusetts, and has no registered agent in Massachusetts.  *Id.*  Indeed, Ms. Crosley-Corcoran has never even visited Massachusetts.  *Id.*  At no time did Ms. Crosley-Corcoran direct any of her conduct towards Massachusetts, nor does she regularly do business or solicit business from Massachusetts.  *Id.*  Ms. Crosley-Corcoran does not derive revenues from goods used or consumed or services rendered in Massachusetts.  *Id.*  Ms. Crosley-Corcoran does not engage in any other persistent course of conduct with the Commonwealth of Massachusetts, and travelling to Massachusetts to defend herself in this litigation would be an extreme hardship for her.  *Id.*

Ms. Crosley-Corcoran maintains a blog at TheFeministBreeder.com where she discusses a variety of topics, including her support for mothers who opt for home births.  *Id.*  On or about December 5, 2012, Ms. Crosley-Corcoran posted an entry at her blog about her experiences as a doula and what she felt she had learned having participated in 20 home births.  *Id.*  Although this post had nothing to do with Ms. Tuteur, as had become her practice by this time, the next day Ms. Tuteur posted a response ridiculing Ms. Crosley-Corcoran.  *Id.*  On or about December 13,

---

[4] Despite the fact that she is no longer licensed to practice medicine, Ms. Tuteur identifies herself on these websites and blogs as: "Dr. Amy Tuteur," "an obstetrician-gynecologist."  *See,* **Exhibit 8**, Massachusetts   Board of Registration of Medicine Physician Profile.  Shockingly, Ms. Tuteur also appears to sell over the internet personalized answers to medical questions, despite no longer being licensed to practice.  *See, e.g.,* **Exhibit 9.**

2012, Ms. Crosley-Corcoran responded with a satirical post which included a photograph of herself giving the finger to the camera, along with a sarcastic remark that now she had given Ms. Tuteur something else to go back to her blog and obsess about.  The remark was clearly sarcastic and was not meant to give Ms. Tuteur any type of license to use Ms. Crosley-Corcoran's photograph on Ms. Tuteur's website.  Nevertheless, the very next day, Ms. Tuteur did just that.

On or about December 14, 2012, Ms. Tuteur posted an entry at her blog in which she reproduced the photograph of Ms. Crosley-Corcoran.  Ms. Crosley-Corcoran had not granted Ms. Tuteur permission to use her photograph for any purpose – much less for a commercial purpose such as her blog (which includes advertisements).  *See* Crosley-Corcoran Affidavit.  At this point, Ms. Crosley-Corcoran consulted with an attorney, Kim Bilbrey, about her rights.  *Id.* Subsequently, Attorney Bilbrey sent a cease and desist letter to Ms. Tuteur pursuant to the DMCA demanding, among other things, that Ms. Tuteur remove from her website Ms. Crosley-Corcoran's photograph.  *Id.  See also* **Exhibit 11**, Affidavit of Kim Bilbrey.

At the time Attorney Bilbrey sent this letter, neither she nor Ms. Crosley-Corcoran knew where Ms. Tuteur was physically located.  *Id.*  Neither Attorney Bilbrey nor Ms. Crosley-Corcoran knew that Ms. Tuteur lived in Massachusetts.  *Id.*  The cease-and-desist letter was sent in good faith and for the legitimate purpose of having Ms. Tuteur remove from her website Ms. Crosley-Corcoran's intellectual property.  *Id.*  Even if Ms. Tuteur had legitimately believed that Ms. Crosley-Corcoran's sarcastic comment somehow constituted "permission" to use her photograph, upon receiving the letter from Ms. Crosley-Corcoran's attorney, she would clearly have understood that any such "permission" had been revoked.  Nevertheless, she refused to remove her picture from her website.

After consultation with her counsel, Ms. Crosley-Corcoran sent a DMCA takedown

notice to BlueHost, the webhosting company that hosted Ms. Tuteur's blog asking that her photograph be removed in accordance with the provisions of the DMCA.  *See* Crosley-Corcoran Affidavit.  Ms. Crosley-Corcoran believed then, and believes now that this was a completely legitimate, legal, and appropriate use of a DMCA takedown notice.  *Id.*

BlueHost is located in Provo, Utah (*see* Exhibit A to the Crosley-Corcoran Affidavit) and, at the time she sent the takedown notice, Ms. Crosley-Corcoran's assumption was that Ms. Tuteur was herself located in Utah.  *See* Crosley-Corcoran Affidavit.  Ms. Tuteur subsequently moved her blog to another web hosting provider, DaringHost, and, again, posted Ms. Crosley-Corcoran's photograph on her blog.  *Id.*  Ms. Crosley-Corcoran again sent a DMCA takedown notice to DaringHost seeking only that her photograph be removed from Ms. Tuteur's blog.  *Id.* According to DaringHost's website, they are located in Connecticut.  *See* **Exhibit 12.**

In response to Attorney Bilbrey's cease and demand email, Ms. Tuteur's husband, Michael Tuteur ("Attorney Tuteur"), sent an email to Attorney Bilbrey claiming that his wife's use of Ms. Crosley-Corcoran's photograph constituted "fair use."  *See* Exhibit E to Plaintiff's Complaint.  Oddly, although this email identified Attorney Tuteur as an attorney, the letter was sent from a personal Gmail account and without letterhead or any kind of firm identification. *See* Marcus Affidavit.  It was only when Attorney Marcus searched for Michael Tuteur's name on the internet that she learned he was Chair of Foley & Lardner's Litigation Department, operating out of the firm's Boston office.  *Id.*  When Attorney Marcus specifically asked, Attorney Tuteur confirmed that he was indeed representing his wife as counsel, but instructed her to send all communications to his personal Gmail account and not his Foley & Lardner address.  *Id.*

Attorneys Marcus and Marcus engaged in a series of confidential settlement discussions

which were ultimately unsuccessful. *Id.* Much to Attorney Marcus's shock, these protected

discussions were improperly reported at length – albeit completely inaccurately – in Ms. Tuteur's

complaint. *Id.*

## Argument

### I.  Personal Jurisdiction Standard.

Where a defendant contests personal jurisdiction, the plaintiff bears the burden of proof

to demonstrate that jurisdiction is proper. *Barrett v. H&R Block, Inc.,* 652 F. Supp. 2d 104, 112

(D. Mass. 2009); *Oggiono v. Fabmet Corp.,* 1993 U.S. Dist. LEXIS 11266 (D. Mass. 1993);

*Jacobs v. MTU North America*, 1992 U.S. Dist. LEXIS 934 (D. Mass. 1992).

In order to assert personal jurisdiction over Ms. Crosley-Corcoran, Ms. Tuteur needs to

prove *both* that Ms. Crosley-Corcoran is subject to jurisdiction under Massachusetts' long arm

statute, G.L. c. 223A, §3, *and* that the exercise of jurisdiction over Ms. Crosley-Corcoran

comports with the Due Process Clause of the United States Constitution. *Genzyme Corp. v. Shire*

*Human Genetic Therapies, Inc.,* 2012 U.S. Dist. LEXIS 169524 (D. Mass. 2012)("A federal

court may only exercise personal jurisdiction in Massachusetts consistent with the Massachusetts

Long-Arm Statute and within the constitutional limits of due process"); *United Elec., Radio &*

*Mach. Workers v. 163 Pleasant St. Corp.,* 960 F.2d 1080, 1086 (1st Cir. 1992)("In Massachusetts,

a court may exercise personal jurisdiction over a foreign defendant if such jurisdiction is

authorized by state statute or rule and its exercise does not offend due process"); *Broadvoice,*

*Inc. v. TP Innovations LLC,* 733 F. Supp. 2d 219, 223 (D. Mass. 2010)("This court has in

personam jurisdiction over a defendant whose contacts with the forum in the aggregate satisfy

the requirements of the Massachusetts Long-Arm Statute and the Due Process Clause of the

Fourteenth Amendment"); *Ginsburg v. Dinicola*, 2007 U.S. Dist. LEXIS 41418 (D. Mass. 2007)

("First, the exercise of jurisdiction must comport with the Massachusetts long-arm statute, Mass.

Gen. Laws ch. 223A, § 3...")

In the present case, the Plaintiff has not even remotely alleged – and cannot allege –

sufficient facts to meet either test.

II.      Massachusetts' Long Arm Statute Does Not Provide Jurisdiction
         Over Ms. Crosley-Corcoran.

General Laws Chapter 223A, §3 provides for personal jurisdiction over a defendant if the

cause of action arises from the defendant's:

> (d) causing tortious injury in this commonwealth by an act or omission outside
> this commonwealth **if** he regularly does or solicits business, or engages in any
> other persistent course of conduct, or derives substantial revenue from goods used
> or consumed or services rendered, in this commonwealth.

G.L. c. 223A, §3(d) (emphasis added).

Simply alleging tortious injury in the Commonwealth is insufficient;[5] both prongs of

section (d) must be met for jurisdiction to lie under the long arm statute. *Kleinerman v. USPS*,

1985 U.S. Dist. LEXIS 13017 (D. Mass. 1985)("jurisdiction under § 3(d) exists only if the

alleged tortfeasor 'regularly does or solicits business, or engages in any other persistent course of

conduct, or derives substantial revenue from goods used or services rendered, in this

commonwealth'"); *Kolikof v. Samuelson*, 488 F. Supp. 881, 884 (D. Mass. 1980)("While the

complaint clearly alleges that defendants caused tortious injury in Massachusetts by recording

the two telephone conversations in Pennsylvania, plaintiff must also satisfy this Court that each

of the two defendants regularly does or solicits business in Massachusetts or engages in any

other persistent course of conduct in Massachusetts or derives substantial revenue from goods

used or services rendered in Massachusetts"); *MerlinOne, Inc. v. Shoom, Inc.,* 20 Mass. L. Rep.

---

[5] Although Ms. Crosley-Corcoran questions whether the Plaintiff has even satisfied the first prong of the test, no question at all exists that she has failed to meet the second prong.

12 (Mass. Super. Ct. 2005)(dismissing claims for lack of personal jurisdiction because "the plaintiff cannot establish that the defendant 'does or regularly solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods or services rendered, in this commonwealth." G.L. c. 223A, § 3(d)"); *Cambridge-Lee Indus. v. Acme Ref. Co.,* 2005 Mass. App. Div. 140 (Mass. App. Div. 2005)("In order to meet the requirements of G.L. c. 223A, § 3(d), Cambridge-Lee must also establish that Acme either regularly does or solicits business in Massachusetts, engages in a 'persistent course of conduct' in Massachusetts or 'derives substantial revenue' from goods that are used or consumed in Massachusetts or services rendered in Massachusetts. For the reasons set forth in the discussion of section 3(a) of the long-arm statute, Cambridge-Lee has failed to establish that Acme engaged in persistent conduct in Massachusetts.")

Even assuming, *arguendo,* that Ms. Tuteur has alleged some sort of legally recognizable harm in Massachusetts, she has not alleged – and cannot allege, much less prove – that Ms. Crosley-Corcoran regularly does or solicits business in Massachusetts, engages in a persistent course of conduct in Massachusetts, or derives substantial revenue from goods used or consumed in Massachusetts or services rendered in Massachusetts.  Indeed, Ms. Crosley-Corcoran's affidavit conclusively establishes that she has no such connections with the Commonwealth. This is fatal to Ms. Tuteur's claim of personal jurisdiction over Ms. Crosley-Corcoran.  *Morrill v. Tong*, 390 Mass. 120, 129 (1983)("General Laws c. 223A, §3, asserts jurisdiction over the person to the constitutional limit only when some basis for jurisdiction enumerated in the statute has been established.  ...a judge would be required to decline to exercise jurisdiction if the plaintiff was unable to satisfy at least one of the statutory prerequisites.")

Because Ms. Crosley-Corcoran is not subject to personal jurisdiction under the

Commonwealth's long-arm statute, the present case must be dismissed pursuant to Fed. R. Civ. P. 12(b)(2).

III.     Personal Jurisdiction Cannot Be Asserted Over Ms. Crosley-Corcoran Consistent With the Due Process Requirements of The United States Constitution.

Even if Ms. Tuteur had alleged facts to bring her complaint within Massachusetts' long arm statute, she would be required to prove that an exercise of personal jurisdiction over Ms. Crosley-Corcoran comports with Due Process.  This, she has not done.

"In its simplest formation, *in personam* jurisdiction relates to the power of a court over a defendant.  It is of two varieties, general and specific." *Broadvoice, Inc. v. TP Innovations, LLC*, 733 F. Supp. 2d 219, 223 (D. Mass. 2010).  In the present case, the plaintiff alleges only – on information and belief[6] - that this Court has specific personal jurisdiction over Ms. Crosley-Corcoran.  Complaint, ¶ 9.  To establish specific jurisdiction, the Plaintiff must prove that the Defendant had sufficient minimum contacts with the Commonwealth.  "Such contacts exist when: (1) the plaintiff's cause of action arises directly out of, or relates to the defendant's forum-based contact; (2) the defendant purposefully availed himself of the privilege of conducting activities within the forum state; and (3) the finding of jurisdiction is consistent with traditional notions of 'fair play and substantial justice.'" *TP Innovations, LLC, quoting International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Here, Ms. Tuteur cannot meet any of the three prongs.  Preliminarily, Ms. Tuteur's complaint alleges but a single act even remotely connected with the Commonwealth of Massachusetts, namely, the fact that Ms. Crosley-Corcoran's former counsel sent a cease-and-desist email to Ms. Tuteur (who resides in Massachusetts).  Her alleged causes of action and damages, however, stem not from the sending of this cease-and-desist letter, but rather from the

---

[6] The fact that the Plaintiff only alleges that "on information and belief" this Court has jurisdiction over Ms. Crosley-Corcoran speaks volumes.

subsequent DMCA takedown notices sent to Ms. Tuteur's hosting providers, neither of which was located in Massachusetts.  As such, Ms. Tuteur cannot meet the relatedness prong.

Even if Ms. Tuteur *could* meet the relatedness prong, she cannot meet either of the other two prongs to prove the existence of the required minimum contacts because, as a matter of law, the mere sending of a cease-and-desist letter does not satisfy the requirements of due process.[7]

The law on this point is not new, ambiguous, or obscure.  *See, e.g., Sportschannel New England L.P. v. Fancaster, Inc.*, 2010 U.S. Dist. LEXIS 106272 (D. Mass. 2010)("These activities amount to the mailing (or emailing) of 'cease and desist' letters, which alone cannot constitute purposeful availment under due process.  ...The Court therefore finds that the holder of a trademark has a right to enforce his trademark without subjecting himself to personal jurisdiction in forums in which he has limited or no substantial contacts otherwise"); *Polaroid Corporation v. Feely*, 889 F. Supp. 21, 26-7 (D. Mass. 1995)(finding the sending of cease and desist letters insufficient under both prongs and holding: "This Court holds that Feely's aggregate contacts are insufficient to constitute purposeful availment of the laws of Massachusetts.  ...Furthermore, it would be unfair and unreasonable to require Feely to litigate in this Court.  The act of sending an infringement letter is an exercise of Feely's rights under federal trademark law which should not subject Feely to suit in any forum where it happens to find a party allegedly infringing his trade name"); *Nordica USA Corp.  v. Tecnica USA Corp.*, 475 F. Supp. 2d 128, 135 (D.N.H. 2007)("It is well-settled that cease-and-desist letters... without more are not sufficient contacts to satisfy the due process clause.")(internal citations and quote marks omitted); *Project DOD v. Federici*, 2009 U.S. Dist. LEXIS 117401, *11-12 (D. Me. 2009)

---

[7] Although Courts have sometimes disagreed about which prong of the Due Process test a plaintiff fails when she alleges only that cease-and-desist or demand letters have been sent into the forum state – the purposeful availment prong, the reasonableness prong, or both – the Courts are consistent about the outcome: dismissal for lack of jurisdiction.

("With respect to the purposeful availment element, the plaintiff contends that the defendant's purported notice, together with the later letter from his lawyer, is sufficient. ...I disagree. ... 'in an infringement case, the sending of a cease-and-desist letter into a forum is generally not considered sufficient alone to establish personal jurisdiction under the effects test for purposeful availment in tort cases.'")(internal citations omitted); *PokitDok, Inc. v. Martin,* 2012 U.S. Dist. LEXIS 160001, *9 (N.D. Cal. 2012)("The letter merely alerted plaintiffs that defendant might file a legal action against them for copyright infringement. ...Therefore, none of the purposeful direction requirements have been satisfied, and sending a cease and desist letter, without more, does not establish personal jurisdiction over defendant"); *Expedite It AOG, LLC v. Clay Smith Eng'g, Inc.,* 2010 U.S. Dist. LEXIS 66026, *11 (N.D. Tex. 2010)("The mere act of asserting a trademark or copyright right through a cease and desist letter does not subject that party to specific personal jurisdiction"); *StayWell Co. v. Wang*, 2006 U.S. Dist. LEXIS 60363, *7 (E.D. Pa. 2006)("The issue of whether letters to the forum state confer personal jurisdiction over the sender has arisen most often when patent or copyright holders demand that purported infringers "cease-and-desist" their unauthorized use of protected property. Almost every court that has considered the issue has held that "cease-and-desist" letters, standing alone, are insufficient to confer personal jurisdiction"); *Stroman Realty, Inc. v. Grillo*, 2006 U.S. Dist. LEXIS 11194, *14 (S.D. Tex. 2006)("courts have repeatedly held that cease-and-desist letters are insufficient to confer specific personal jurisdiction in patent and copyright cases because principles of fair play and substantial justice afford a party latitude to inform others of its rights without subjecting itself to suit in a foreign forum"); *Wise v. Lindamood,* 89 F. Supp. 2d 1187, 1191 (D. Colo. 1999)(and numerous cases cited therein)("an individual should not subject itself to personal jurisdiction in a forum solely by informing a party who happens to be located there of suspected

11

infringement"); *Database America v. Bell South Advertising & Publishing*, 825 F. Supp. 1195, 1213 (D.N.J. 1993)(collecting cases)("Courts have consistently held that the sending of a cease and desist letter in patent or copyright cases is alone insufficient to establish the minimum contacts necessary for specific personal jurisdiction"); *Sabanek Assocs. v. Navarro*, 1995 U.S. Dist. LEXIS 21473 (D.N.H. 1995)(same)(collecting cases); *Modern Computer Corp. v. Ma*, 862 F. Supp. 938, 945 (E.D.N.Y. 1994)(collecting cases)("Courts have consistently held that in the context of an action for non-infringement in copyright or patent cases, the sending of a cease and desist letter to the alleged infringer is alone insufficient to establish the minimum contacts necessary for personal jurisdiction"); *Bodum, U.S.A. v. Hantover, Inc.*, 2012 U.S. Dist. LEXIS 53165 (S.D.N.Y. 2012)("Bodum argues specific jurisdiction also authorizes personal jurisdiction over Hantover.  Bodum relies primarily on two cease-and-desist letters Hantover's counsel sent to Bodum's New York office in drawing this conclusion.  ...However, the Federal Circuit has repeatedly held that 'cease-and-desist letters alone do not suffice to justify personal jurisdiction...")(multiple citations omitted); *Music Makers Holdings, LLC v. Sarro*, 2010 U.S. Dist. LEXIS 71920, *14 (D. Md. 2010)("recent out-of-circuit court of appeals decisions have analyzed the issue in a variety of different contexts and have uniformly held that cease-and-desist letters alone do not establish personal jurisdiction")(numerous case citations omitted); *Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.,* 148 F.3d 1355, 1360-61 (Fed. Cir. 1998) ("Principles of fair play and substantial justice afford a patentee sufficient latitude to inform others of its patent rights without subjecting itself to jurisdiction in a foreign forum.  A patentee should not subject itself to personal jurisdiction in a forum solely by informing a party who happens to be located there of suspected infringement.  Grounding personal jurisdiction on such contacts alone would not comport with principles of fairness"); *Douglas Furniture Co. of*

*California v. Wood Dimensions, Inc.*, 963 F. Supp. 899, 903 (C.D.N.Y. 1997)("If any attempt by an intellectual property holder to put an alleged wrongdoer on notice forced the property holder to submit to jurisdiction of the alleged wrongdoer's forum, an intellectual property owner would be forced to file an action in his own jurisdiction in order to avoid the threat of being hailed before a court in another, possibly distant state"); *KVH Industries, Inc. v. Moore,* 789 F. Supp. 69, 73 (D.R.I. 1992)("If the Court found personal jurisdiction in this case, it would be tantamount to announcing that all patent holders are susceptible to suit in this forum if they assert their rights against a Rhode Island resident. This is not a desirable policy. It would be unfair and unjust to adopt a rule that to uphold her rights, a patent holder must submit to the jurisdiction of a wrongdoer's forum"); *Beacon Enters., Inc. v. Menzies*, 715 F.2d 757, 766 (2nd Cir. 1983) ("It is difficult to characterize [defendant's] letter alleging infringement in an unspecified locale and threatening litigation in an unspecified forum as an activity invoking the 'benefits and protection of New York law"); *Classic Golf Co. v. Karsten Mfg. Co.,* 231 U.S.P.Q. (BNA) 884, 885 (N.D. Ill. 1986) ("The sending of infringement letters has been uniformly held insufficient by itself to satisfy the minimum contacts requirement").[8]

Because Ms. Tuteur has not – and cannot – allege sufficient minimum contacts to satisfy the Due Process requirement of the Constitution, the present case must be dismissed pursuant to Fed. R. Civ. P. 12(b)(2).

## Conclusion

Ordinarily, it might be surprising for a Plaintiff to attempt to force an individual Defendant – a student and mother of three young children, who lives a thousand miles from this

---

[8] Although Ms. Crosley-Corcoran assumes that four solid pages worth of citations suffices to make the point, she would be more than happy to provide the Court with dozens of other case citations consistently holding that the sending of cease and desist letters does not meet the constitutional due process requirements for an exercise of personal jurisdiction.  It is odd that the Plaintiff appears to have missed all of these cases in doing her reasonable pre-filing inquiries.

court – to appear in a forum which so clearly lacks any basis to exercise personal jurisdiction over her.  Ordinarily, concerns for fairness, due process, and precedent would have precluded such an action from even being filed in Massachusetts at all.  But Amy Tuteur is a bully, and this is what bullies do.  The allegations concerning personal jurisdiction are frivolous on their face.  Ms. Crosley-Corcoran was sued in Massachusetts solely to force her to retain counsel in a foreign forum and to require her to incur the additional costs of moving to dismiss this improvidently-filed Complaint.

Thankfully, though, this is also a Court of law and, so, Ms. Crosley-Corcoran respectfully requests that this Court do what *it* does and dismiss the case in its entirety pursuant to Fed. R. Civ. P. 12(b)(2).

Respectfully submitted,

GINA CROSLEY-CORCORAN

By her attorney,

*/s/ Evan Fray-Witzer*
Evan Fray-Witzer (BBO# 564349)
Ciampa Fray-Witzer, LLP
20 Park Plaza, Suite 505
Boston, MA 02116
Tel: (617) 426-0000
Fax: (617) 423-4855
Evan@CFWLegal.com

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on March 5, 2013.

*/s/ Evan Fray-Witzer*