UNITED STATES DISTRICT COURT
FOR THE DISTRICT COURT OF MASSACHUSETTS

| | |
|---|---|
| AMY TUTEUR, M.D., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>GINA CROSLEY-CORCORAN, )<br>)<br>Defendant. )<br>) | Civil Action No.: 13-cv-10159-MBB |

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY AND PROTECTIVE ORDER**

Plaintiff Amy Tuteur, M.D. ("Dr. Tuteur"), submits this Memorandum in Support of her Motion For Expedited Discovery and Protective Order (the "Motion").

Based on Defendant Gina Crosley-Corcoran's own statements on the Internet, as well as the alteration or deletion of relevant material from her Facebook page, Twitter account and her own blog, it appears highly probable that Defendant has deleted (or, at a minimum, irretrievably modified) relevant, electronically-stored information after this action was commenced. Defendant Crosley-Corcoran was twice put on notice by Dr. Tuteur not to destroy or modify such information, yet her conduct has continued. Moreover, despite repeated requests that Crosley-Corcoran explain her actions and her document preservation efforts, she has refused to engage in any productive discussions regarding the subject. With the increasing risk that relevant evidence may be lost every day, Dr. Tuteur is constrained to seek immediate relief from this Court and requests limited, expedited discovery of Crosley-Corcoran's electronically-stored information as well as the entry of a protective order to halt further destruction of evidence.

## BACKGROUND

### *Dr. Tuteur's Complaint*

Dr. Tuteur commenced this action on January 25, 2013.  Dr. Tuteur's Complaint seeks injunctive relief and damages for misrepresentation of copyright claims under the Digital Millennium Copyright Act ("DMCA") and damages for tortious interference with contracts.

In brief, Dr. Tuteur publishes an online blog called "The Skeptical OB."  Complaint, ¶ 16.  Dr. Tuteur drew the ire of another blogger, Defendant Crosley-Corcoran, when she published an article in December 2012 that posed a series of critical, rhetorical questions directed to Crosley-Corcoran.  *Id.*, ¶¶ 23-24.  Crosley-Corcoran responded by posting a story on her own blog, "The Feminist Breeder," criticizing Dr. Tuteur's online advocacy.  *Id.*, ¶ 25.  Crosley-Corcoran's blog post featured a picture of herself "giving the finger" to Dr. Tuteur.  *Id.*  Crosley-Corcoran offered the photo as something Dr. Tuteur "can take back to [her] blog and obsess over . . . ."  *Id.*  Thereafter, Dr. Tuteur published a commentary about Crosley-Corcoran on The Skeptical OB that incorporated Crosley-Corcoran's photo.  *Id.*, ¶ 26.  As alleged in the Complaint, Dr. Tuteur's use of Crosley-Corcoran's photo was expressly authorized and a fair use under 17 U.S.C. § 107.  *Id.*, ¶ 33.

In response to Dr. Tuteur's posting of Crosley-Corcoran's photo, Crosley-Corcoran issued serial takedown notices compelling Dr. Tuteur's online service providers to remove the photo under the terms of the DMCA.  *Id.*, ¶¶ 34-51.  Crosley-Corcoran also maliciously encouraged others to assist her with the express goal of shutting down Dr. Tuteur's blog permanently.  *Id.*, ¶¶ 45, 52-62.

The Complaint contains two counts: Misrepresentation pursuant to 17 U.S.C. § 512(f) (Count I), and Tortious Interference With Contracts (Count II).

<u>*Crosley-Corcoran's Alterations To Her Online Presence*<br>*Following Commencement Of This Action*</u>

On January 25, 2013, shortly after receiving word that this action had been commenced, Crosley-Corcoran began making wholesale changes to her Facebook page, her Twitter account and her blog – titled "The Feminist Breeder." In particular, within hours after the lawsuit's commencement, Crosley-Corcoran made alterations to the privacy settings of several public comments from The Feminist Breeder's Facebook page expressly discussing Dr. Tuteur, including at least one of Crosley-Corcoran's own comments.

Crosley-Corcoran has since removed The Feminist Breeder from public view; its content is now almost exclusively accessible to paying subscribers.

On January 30, 2013, Crosley-Corcoran posted on her personal Facebook page that she was "archiving [her] entire [Twitter] feed to save it offline for litigation purposes, **then deleting it** . . . ." (Emphasis added.) A copy of a screenshot from Crosley-Corcoran's Facebook page taken January 30, 2013, is attached hereto as <u>Exhibit A</u>.

In that same period of time, Crosley-Corcoran's Twitter username was changed from @FeministBreeder to @IraSleepsOver. A screenshot of Crosley-Corcoran's Twitter feed, operating under the username @IraSleepsOver, taken January 29, 2013, is attached hereto as <u>Exhibit B</u>. (Crosley-Corcoran has apparently since switched her username back to @FeministBreeder. A copy of Crosley-Corcoran's March 22, 2013, Facebook post claiming that "someone sinister took over" her username is attached hereto as <u>Exhibit C</u>.) The username @IraSleepsOver now no longer appears on Twitter.

<u>*First Litigation Hold Notice To Crosley-Corcoran*</u>

Crosley-Corcoran's alterations to her online presence during the pendency of this action began *after* she was instructed to preserve relevant and potentially relevant electronically-stored

information. On January 25, 2013 – the same day this action was commenced – counsel for Dr. Tuteur delivered a litigation hold letter to Crosley-Corcoran (the "First Litigation Hold Notice").[1] In the First Litigation Hold Notice, Crosley-Corcoran was informed that she had a "duty to preserve all potentially relevant electronic data in addition to any paper records … [and] that all of [her] data – including online communications – [must] be preserved and maintained during the pendency of this lawsuit." *Id.* With respect to electronically-stored information, Crosley-Corcoran was specifically directed "to preserve all potentially relevant emails that [she] sent or received, along with all posts, comments, messages, and any other form of correspondence or information exchanged, shared, or uploaded on any platform or account over which [she] or [her] agents exercise control, including – but not limited to – Facebook accounts, [her] blogs (e.g., thefeministbreeder.com), Google Docs, and all other Internet-based services." *Id.*

The First Litigation Hold Notice addressed the changes that were made to The Feminist Breeder shortly after this lawsuit was filed, by noting that "within a matter of hours after [Crosley-Corcoran] learned about Dr. Tuteur's lawsuit . . . , [she] removed several public comments from thefeministbreeder.com's Facebook page concerning Dr. Tuteur, including at least one of [Crosley-Corcoran's] comments." *Id.*

On January 27, 2013, Crosley-Corcoran acknowledged receipt of the First Litigation Hold Notice in an email to Dr. Tuteur's counsel. A copy of Crosley-Corcoran's January 27, 2013, email is attached hereto as Exhibit E.[2]

---

[1] A copy of the First Litigation Hold Notice is attached hereto as Exhibit D.

[2] In her email acknowledging receipt of the First Litigation Hold Notice, Crosley-Corcoran makes the untrue and unsupported assertion that Dr. Tuteur started a "massive removal of her online activities."

*Second Litigation Hold Notice To Crosley-Corcoran And Repeated Attempts*
*To Obtain Crosley-Corcoran's Voluntary Compliance With Her Discovery Obligations*

Despite Crosley-Corcoran's receipt of the First Litigation Hold Notice, Crosley-Corcoran reported that she was deleting her Twitter account, as discussed above. Consequently, on January 31, 2013, counsel for Dr. Tuteur delivered another litigation hold letter to Crosley-Corcoran (the "Second Litigation Hold Notice").[3] In the Second Litigation Hold Notice, Crosley-Corcoran was again advised that alteration of her online communications violates her duty to preserve potentially relevant evidence and asked to account for her actions as follows:

> The deletion of your entire Twitter account would be a flagrant violation of your duty to preserve potentially relevant evidence. Further, no archive of correspondence exchanged or posts made on your Twitter account is sufficient for purposes of satisfying your obligation to preserve evidence unless such archive is a forensically sound, mirror image of those records.
>
> If you have not yet deleted your Twitter account, then refrain from doing so during the pendency of this litigation. If you have already deleted your Twitter account, please immediately provide a detailed description of the archive of your account that you created (if any).

Crosley-Corcoran did not respond to the Second Litigation Hold Notice. Accordingly, Dr. Tuteur's counsel proceeded to take measured steps in an effort to gain Crosley-Corcoran's voluntary compliance with her discovery obligations. To wit, on February 12, 2013, Dr. Tuteur's counsel sent an email to Crosley-Corcoran's counsel noting Crosley-Corcoran's lack of cooperation in this regard and asking for the status of Crosley-Corcoran's document preservation efforts. A copy of this email is attached hereto as Exhibit G.

On March 12, 2013, Dr. Tuteur's counsel sent a litigation hold letter to Twitter requesting

---

In fact, Dr. Tuteur has engaged in no such activities, and all postings regarding Crosley-Corcoran can still be viewed on the Internet, unchanged.

[3] A copy of the Second Litigation Hold Notice is attached hereto as Exhibit F.

the preservation of Crosley-Corcoran's various accounts in light of concerns about Crosley-Corcoran's manipulation of her online presence. A copy of this letter is attached hereto as Exhibit H.

Given Crosley-Corcoran's silence in response to Dr. Tuteur's repeated requests for information about her document preservation efforts, on March 13, 2013, Dr. Tuteur's counsel conducted a telephone conference with Crosley-Corcoran's counsel, pursuant to LR 7.1, concerning the subject matter of this Motion. During the conference, Crosley-Corcoran's counsel was not able to say whether Crosley-Corcoran would oppose this Motion. Accordingly, on March 15, Dr. Tuteur's counsel sent Crosley-Corcoran's counsel a follow-up email attaching a proposed subpoena to Twitter. A copy of this email is attached hereto as Exhibit I. In the March 15th email, Dr. Tuteur's counsel explained that "[a] similar form would be used in subpoenas to Facebook and to [Crosley-Corcoran's] web host" and invited Crosley-Corcoran's counsel to advise whether "there is any room for discussion in" this matter. Thereafter, Dr. Tuteur's counsel sent Crosley-Corcoran's counsel follow-up emails on March 18 and March 19. On March 20, Crosley-Corcoran's counsel stated that Crosley-Corcoran would oppose the Motion.

On March 22, 2013, Crosley-Corcoran's Facebook page was removed from public view for several hours. In addition, periodic monitoring of Crosley-Corcoran's Facebook feed has also shown that Crosley-Corcoran deleted myriad public comments from her followers concerning the circumstances of this action. In light of the possibility that Crosley-Corcoran was further altering her online presence, and given her failure to provide any information about her document preservation efforts, Dr. Tuteur's counsel sent an email to Crosley-Corcoran's attorney on March 22, 2013, asking that he "please immediately provide information about all

steps [he has] taken as Ms. Crosley-Corcoran's attorney to prevent spoliation of evidence." A copy of the email correspondence between counsel from March 22 and March 23, 2013, is attached hereto as Exhibit J.

Despite multiple requests for information about Crosley-Corcoran's document preservation efforts, the most expansive statement from Crosley-Corcoran to date on this topic appears in an email from her attorney dated March 23, 2013: "Nothing from either the Facebook page nor the Twitter account has been deleted and your client has absolutely no basis to claim otherwise. If you feel you have a good faith basis to support a contrary conclusion, then by all means, do whatever it is you feel you need to do with respect to seeking relief from the Court." *Id.*

## ARGUMENT

### I. LIMITED EXPEDITED DISCOVERY AND A PRESERVATION ORDER ARE NECESSARY TO PRESERVE EVIDENCE.

Pursuant to Rule 26(d), the Court is specifically empowered to control the timing and sequence of discovery. See Fed. R. Civ. P. 26(d). Expedited discovery before the Rule 26(f) conference may be permitted upon a showing of good cause. Fed. R. Civ. P. 26(b)(1) ("For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action."). Although the "First Circuit has not addressed the proper standard for determining whether good cause exists for expedited discovery; Judges of this Court have allowed it in a variety of circumstances." Patrick Collins, Inc. v. Does 1-79, 286 F.R.D. 160, 163 (D. Mass. 2012) (Sorokin, C. Mag. J.) citing McMann v. Doe, 460 F.Supp.2d 259, 265–66 (D.Mass.2006) (Tauro, J.) (permitting *ex parte* expedited discovery for purpose of determining the identity of a John Doe defendant).

Similarly, the sweeping discretion under Rule 26 to control and manage discovery

includes the entry of orders pertaining to evidence preservation.  See Chambers v. NASCO, Inc., 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (courts are invested with inherent powers to manage their own affairs so as to achieve expeditious disposition of cases).  The breadth of a district court's discretion will permit it to fashion a preservation order which will prevent spoliation of evidence.  See, e.g., Williams v. Massachusetts Mut. Life Ins. Co., 226 F.R.D. 144, 146-47 (D. Mass. 2005) (Neiman, Mag. J.) (entering order requiring defendants to preserve certain "documents, hard drives and e-mail boxes"), citing Pueblo of Laguna v. United States, 60 Fed. Cl. 133, 138 (2004) ("one seeking a preservation order [must] demonstrate that it is necessary and not unduly burdensome").

      The best evidence of Crosley-Corcoran's knowledge of material facts and her motives, which are relevant to Dr. Tuteur's claims for misrepresentation and tortious interference, are her communications during the relevant period of time covered by the Complaint.  Crosley-Corcoran has demonstrated a penchant for engaging in public and private communications across three Internet platforms in particular: Facebook, Twitter, and her own blog, The Feminist Breeder.  For this reason, Crosley-Corcoran's apparent deletion or alteration of relevant evidence and her failure to take all steps necessary to preserve relevant or potentially relevant communications across her favored Internet platforms is especially troubling and prejudicial to Dr. Tuteur's ability to prosecute her claims in this action.  See, e.g., Katiroll Co., Inc. v. Kati Roll & Platters, Inc., WL 3583408 (D.N.J. Aug. 3, 2011) (changes to Facebook profile during litigation can constitute spoliation).  Crosley-Corcoran's conduct in this regard reveals that, at the very least, she has not adhered to her duty to preserve evidence.  See Citizens for Consume v. Abbott Laboratories, 1:01-CV-12257, 2007 WL 7293758 (D. Mass. Mar. 26, 2007) (Saris, J.) ("The weight of authority indicates that a duty to preserve evidence arises when a party knows or

should know about potential litigation.").

Crosley-Corcoran's refusal to cooperate or to otherwise engage in productive discussion concerning Dr. Tuteur's legitimate concerns about the status of her preservation efforts, despite almost two months of diligent efforts by Dr. Tuteur to encourage Crosley-Corcoran's cooperation in this regard, leaves Dr. Tuteur with no other option than to seek relief from this Court.  Because Crosley-Corcoran has demonstrated an unwillingness to comply with her preservation obligations, there is good cause for conducting expedited discovery.

Given the significant risk of loss of this important evidence and the clear prejudice to Dr. Tuteur should this electronically-stored information be lost or destroyed, there is a clear and pressing need both for a protective order to prevent the destruction of this evidence and for expedited discovery to determine what, if anything, has been irretrievably lost.

## II.     THE EXPEDITED DISCOVERY AND PROTECTIVE ORDER SOUGHT ARE VERY LIMITED IN SCOPE.

The discovery that Dr. Tuteur seeks to expedite is the issuance of three subpoenas – one each to Twitter, Facebook, and Crosley-Corcoran's webhost for The Feminist Breeder.  Copies of the document categories for the proposed subpoenas are attached hereto as <u>Exhibits K</u>, <u>L</u>, and <u>M</u>, respectively.  In addition, Dr. Tuteur seeks entry of the protective order attached hereto as <u>Exhibit N</u>.  The subpoenas are narrowly tailored to obtain communications and posts made during the relevant time period.  Plainly, such subpoenas would be entirely appropriate in the course of ordinary discovery, as they are focused, narrow and not unduly burdensome in any respect on either the respondents or the Defendant.  Moreover, these are the only three subpoenas that Dr. Tuteur is seeking to send out prior to the LR 16.1 scheduling conference.  The corresponding protective order is intended to prevent the destruction of electronically-stored information until the discovery in this action is completed.  Both the subpoenas and the

protective order are necessary to preserve relevant evidence. Accordingly, this Court should allow Dr. Tuteur's Motion. See Williams, 226 F.R.D. at 146-47.

## CONCLUSION

For the foregoing reasons, Plaintiff Amy Tuteur, M.D., respectfully requests that this Court enter the protective order attached as Exhibit N and permit Dr. Tuteur to issue the subpoenas attached hereto as Exhibits K, L, and M.

                                                Respectfully submitted,

                                                /s/ Russell Beck
                                                Russell Beck (BBO # 561031)
                                                  rbeck@beckreed.com
                                                Stephen D. Riden (BBO # 644451)
                                                  sriden@beckreed.com
                                                BECK REED RIDEN LLP
                                                155 Federal Street, Suite 1302
                                                Boston, MA 02110
                                                Telephone:  (617) 500-8660
                                                Facsimile:  (617) 500-8665

Dated:  April 1, 2013

## CERTIFICATE OF SERVICE

     I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified in the Notice of Electronic Filing and paper or electronic copies will be delivered to those indicated as non-registered participants on April 1, 2013.

                                                /s/ Stephen D. Riden
                                                Stephen D. Riden