UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 13-10159-RGS

AMY TUTEUR, M.D.

v.

GINA CROSLEY-CORCORAN

MEMORANDUM AND ORDER
ON DEFENDANT'S MOTION TO DISMISS
PURSUANT TO FED. R. Civ. P. 12(b)(2)

April 10, 2013

STEARNS, D.J.

   This action arises out of an escalating polemic between two bloggers who have diametrically opposed views on the safety and virtues of home birthing.  Plaintiff Amy Tuteur, a resident of Massachusetts, is a former physician and critic of midwifery.  Tuteur authors several blogs, including *The Skeptical OB*.  Defendant Gina Crosley-Corcoran, who lives in Illinois, is a midwife (doula) and author of the blog *TheFeministBreeder*.  After a particularly acrimonious and personal internet exchange, on December 13, 2012, Crosley-Corcoran posted a photograph of herself on her blog site making a graphic gesture with her middle finger that is often associated with an unrealized ambition of French soldiers at the Battle of Agincourt.  The photo's caption informed the reader that Crosley-Corcoran was giving Tuteur "something else to go

back to her blog and obsess about."  Tuteur copied the photo and posted it on *The Skeptical OB* without Crosley-Corcoran's permission.  Crosley-Corcoran responded with a cease and desist letter to Tuteur alleging copyright infringement.  She also sent Tuteur's website provider, BlueHost (a company whose servers are based in Utah), a "takedown notice" pursuant to the Digital Millennium Copyright Act (DMCA), 17 U.S.C. § 512(c)(3).  Crosley-Corcoran's counsel made several attempts to resolve the matter more or less amicably.  These efforts, however, came to naught when Tuteur preemptively filed this lawsuit alleging abuse of the DMCA by Crosley-Corcoran.

In her two-count Complaint, Tuteur accuses Crosley-Corcoran of making a material misrepresentation of infringing activity, in violation of 17 U.S.C. § 512(f), and of tortiously interfering with an advantageous contractual relationship enjoyed by Tuteur.  Both Counts are premised on the takedown notice sent by Crosley-Corcoran to BlueHost.  Crosley-Corcoran, for her part, moves to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(2).  She maintains that as an Illinois resident whose connection to Massachusetts is only by virtue of the ubiquitous access that readers like Tuteur have to her blog over the world wide web, she lacks the "minimum contacts" necessary to subject herself to *in personam* jurisdiction in this forum.[1]

---

[1] "The proper exercise of specific *in personam* jurisdiction hinges on satisfaction of two requirements:  first, that the forum in which the federal district court sits has a

As a rule, a court will determine whether Article III jurisdiction exists before reaching the merits of a plaintiff's claim. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 88-89 (1998). But if the merits can be readily resolved in favor of the party challenging jurisdiction, complex jurisdictional questions can be avoided. *Norton v. Mathews*, 427 U.S. 524, 530-532 (1976). This is such a case. The core question – one that the First Circuit has not fully addressed – is whether ownership of an active, interactive, or passive website maintained by a service provider based outside of Massachusetts but which Massachusetts residents can access over the Internet satisfies

---

long-arm statute that purports to grant jurisdiction over the defendant; and second, that the exercise of jurisdiction pursuant to that statute comports with the strictures of the [Due Process Clause of the] Constitution." *Pritzker v. Yari*, 42 F.3d 53, 60 (1st Cir. 1994). Under the Massachusetts Long-Arm-Statute, "[a] court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's (a) transacting any business in this commonwealth; . . . [or] (c) causing tortious injury by an act or omission in this commonwealth." Mass. Gen. Laws ch. 223A, §§ 3 (a) and (c). The Fourteenth Amendment's concern for fundamental fairness is expressed by the requirement that there be certain "minimum contacts" between the defendant and the forum state to establish specific jurisdiction. The test is in three parts. "First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's court foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable." *United Elec. Workers v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1089 (1st Cir. 1992).

3

the purposeful availment test.[2]  *See Cossaboon v. Maine Med. Ctr.*, 600 F.3d 25, 35

(1st Cir. 2010)  (the mere fact that a web site is interactive is not sufficient to confer

jurisdiction as such a rule would eviscerate the limits on personal jurisdiction – one has

---

[2] In her Opposition to Crosley-Corcoran's motion to dismiss, Tuteur relies on *Calder v. Jones*, 465 U.S. 783 (1984).  In *Calder*, an editor and a writer for the National Enquirer, both of whom were residents of Florida, were sued in California for libeling Shirley Jones, a California actress.  *Id*. at 789-790.  The offending article involved Jones's California activities.  The story was drawn from California sources, and the brunt of the harm, in terms of emotional distress and injury to Jones's professional reputation, was felt in California.  In upholding the exercise of personal jurisdiction over the two defendants, the Supreme Court pointed to the fact that the National Enquirer had its largest circulation – over 600,000 copies – in California.  *Id.* "[J]urisdiction properly could be asserted over the reporters because the defendants had aimed an act at the forum state, knew the act would likely have a devastating effect, and knew the injury would be felt in the forum state, where Jones lived and worked 'and in which the National Enquirer ha[d] its largest circulation.'" *Id.* at 790.  *See also Noonan v. Winston*, 135 F.3d 85, 90 (1st Cir. 1998) ("Just as widespread circulation of a publication indicates deliberate action, thin distribution may indicate a lack of purposeful contact.").  The so-called "effects" test derived from *Calder* provides that "a defendant's tortious acts can serve as a source of personal jurisdiction only where the plaintiff makes a prima facie showing that the defendant's acts (1) were intentional, (2) were uniquely or expressly aimed at the forum state, and (3) caused harm, the brunt of which was suffered - and which the defendant knew was likely to be suffered - [in the forum state]."  *Johnson v. Arden*, 614 F.3d 785, 795-796 (8th Cir. 2010), quoting *Lindgren v. GDT, LLC*, 312 F. Supp. 2d 1125, 1132 (S.D. Iowa 2004).  It would seem unlikely that Tuteur could satisfy the three elements of the *Calder* test, particularly the second.

to look to the extent to which the interactive features are actually used to conduct commercial activities).

Putting aside the thorny issue of internet-based personal jurisdiction, in reviewing the exhibits attached to the pleadings, the court seriously questions whether Tuteur has stated a viable cause of action against Crosley-Corcoran.  The takedown notice at issue appears to conform to the letter of the requirements of section 512(c)(3) the DMCA.  In it, Crosley-Corcoran states accurately that her likeness has been copied without her express authorization and published by Tuteur without permission on her *SkepticalOB* website.  *See* Compl. Ex. 11.  It is true that if the tables were reversed, and this was a lawsuit brought by Crosley-Corcoran against Tuteur for copyright infringement, Tuteur would have a plausible, and even dispositive fair use affirmative defense, *see Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 590 (1994), or as she suggests at one point, a defense of implied license, *see Estate of Hevia v. Portrio Corp.*, 602 F.3d 34, 40-42 (1st Cir. 2010).  But there is no requirement in the DMCA that a notice-giver inform the service provider of an infringer's possible affirmative defenses, only that she affirm her good faith belief (as appears to be the case here) that the copyrighted material is being used without her (or her agent's) permission.  Seen in this light, there is no material misrepresentation by Crosley-Corcoran of

infringement, as a viable cause of action under section 512(f)(1) would require.[3]

Tuteur's tortious interference claim would also seem vulnerable on similar grounds.  The Complaint alleges that Crosley-Corcoran by causing BlueHost to remove her photograph from Tuteur's blog site "[was] acting with improper motive and/or improper means in causing harm to Dr. Amy [Tuteur] and preventing her exercise of contractual rights."  Compl. ¶ 78.  *See also United Truck Leasing Corp. v. Ronald D. Geltman*, 406 Mass. 811, 816 (1990) (adopting Restatement (Second) of Torts § 766 (1977)).  Here, there would seem nothing improper about the purpose of Crosley-Corcoran's takedown notice, which was to stop what she believed was an infringement of her copyrighted likeness, while the means that she chose, sending a the notice to the service provider, was one explicitly authorized by the statute.

A district court may, on its own initiative, note the apparent inadequacy of a complaint and enter a dismissal on the merits.  It will do so, however, only after giving a plaintiff notice and the opportunity to address the complaint's perceived deficiencies.  *See Wyatt v. City of Boston*, 35 F.3d 13, 14-15 (1st Cir. 1994); *see also Chute v. Walker*, 281 F.3d 314, 319 (1st Cir. 2002).  Consistent with these strictures, the court

---

[3] The MDCA provides a procedure for counter-notification where an accused infringer believes that a mistake has been made by the provider in removing disputed material. *See* 17 U.S.C. § 512(g).

will give Tuteur twenty-one (21) days from the date of this decision to show cause why

the Complaint should not be dismissed on the merits and/or on jurisdictional grounds.

SO ORDERED.

/s/ Richard G. Stearns

_____

UNITED STATES DISTRICT JUDGE