UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMY TUTEUR, M.D., | ) |
| Plaintiff, | ) Civil Action No. 13-cv-10159 MBB |
| v. | ) |
| GINA CROSLEY-CORCORAN, | ) |
| Defendant. | ) |

**MOTION OF NON-PARTIES ELECTRONIC FRONTIER FOUNDATION AND DIGITAL MEDIA LAW PROJECT FOR LEAVE TO FILE BRIEF AS *AMICI CURIAE***

Electronic Frontier Foundation ("EFF") and the Digital Media Law Project ("DMLP") seek leave to file the accompanying *amici curiae* brief in the above-captioned case in partial support of Plaintiff Amy Tuteur. The proposed brief discusses issues raised by the Court's Order of April 10, 2013 regarding the merits of Tuteur's claim under Section 512(f) of the Digital Millennium Copyright Act ("DMCA"). The Court's ruling on this claim will have significance well beyond the parties in this case.

EFF is a member-supported, nonprofit public interest organization dedicated to protecting civil liberties and free expression in the digital world. EFF seeks to protect the rights of law-abiding Internet users to communicate, learn, and engage in daily life online. EFF has particular interest in the rule of law at issue in Tuteur's claim under Section 512(f) of the DMCA. EFF has represented numerous plaintiffs in Section 512(f) cases. *See, e.g.*, *Sapient v. Uri Geller and Explorologist Ltd.*, 3:07-cv-02478 VRW (N.D. Cal.); *Showing Animals Respect and Kindness v. Professional Rodeo Cowboys Ass'n*, 1:08-cv-03314 (N.D. Ill). In particular, it represents Stephanie Lenz in *Lenz v. Universal Music Corp.*, 5:07-cv-03783 JF (N.D. Cal.). A central issue

1

in that case, as in this one, is whether a copyright owner can be liable under Section 512(f) for sending a takedown notice without proper consideration of fair use. *See Lenz v. Universal Music Corp.*, 572 F. Supp. 2d 1150, 1154-55 (N.D. Cal. 2008) (holding that "[a]n allegation that a copyright owner acted in bad faith by issuing a takedown notice without proper consideration of the fair use doctrine [] is sufficient to state a misrepresentation claim pursuant to Section 512(f) of the DMCA"); *Lenz v. Universal Music Corp.*, 5:07-CV-03783-JF, 2013 WL 271673 *7 n.3 (N.D. Cal. Jan. 24, 2013) (showing that defendant "willfully blinded itself to the potential application of the fair use doctrine" would be sufficient to establish liability under Section 512(f)).

The DMLP provides legal assistance, training, and other resources for online and citizen media. The DMLP regularly contributes to *amicus curiae* briefs in a variety of cases with important implications for online speech, journalism, and the public good. Some examples include *Barclays Capital Inc. v. Theflyonthewall.com, Inc.*, 10-1372-CV (2d Cir. June 21, 2010) (urging the Second Circuit to apply First Amendment scrutiny to the "hot news misappropriation" doctrine), *Wright Development Group LLC v. Walsh*, No. 08-2783 (Ill. Mar. 3, 2010) (advocating for rejection of lower courts' narrow interpretations of Illinois's Anti-SLAPP statute, known as the Citizen Participation Act), *The Mortgage Specialists, Inc. v. Implode-Explode Heavy Industries*, No. 2009-0262 (N.H. June 22, 2009) (addressing prior restraints and asking the Hampshire Supreme Court to defend the First Amendment rights of a website that covers news about the mortgage industry), and *Seaton v. TripAdvisor*, No. 12-6122 (6th Cir. Feb. 27, 2013) (arguing that websites using crowdsourcing to aggregate citizen reports and rely on that data to draw conclusions cannot be liable for defamation, as such conclusions would be protected in Tennessee under the doctrine of opinion based on disclosed facts). The DMLP advocates on behalf of those who gather and report news and information online and disseminate that news and information to the public via the Internet, and citizens regularly depend upon

DMLP's guidance on issues relating to newsgathering, reporting, and the First Amendment. The DMLP has a particular interest in this case given the potential misuse of overbroad copyright claims to stifle critical speech and the importance of Section 512(f) of the Copyright Act in striking a balance between protection of content owners' rights and free expression online.

The fundamental standard for submission of an *amicus* brief is whether it "will aid in the determination of the motion[] at issue." *James Square Nursing Home, Inc. v. Wing*, 897 F.Supp. 682, 683 (N.D.N.Y. 1995) *aff'd*, 84 F.3d 591 (2d Cir. 1996). Among other helpful roles of *amici*,

> [s]ome friends of the court are entities with particular expertise not possessed by any party to the case. Others argue points deemed too far-reaching for emphasis by a party intent on winning a particular case. Still others explain the impact a potential holding might have on an industry or other group.

*Neonatology Associates, P.A. v. C.I.R.*, 293 F.3d 128, 132 (3d Cir. 2002) (Alito, J.). Judges in the District of Massachusetts have frequently allowed non-parties to file briefs as amicus curiae. *See AT&T Mobility LLC v. Princi*, CIV.A. 11-11448-RWZ, 2011 WL 6012945 (D. Mass. Dec. 2, 2011); *Sony BMG Music Entm't v. Tenenbaum*, 672 F. Supp. 2d 217, 224 n.4 (D. Mass 2009); *Pye v. Young Women's Christian Ass'n of W. MA*, 419 F. Supp. 2d 20, 22 (D. Mass. 2006).

EFF and DMLP will assist the Court in this case by discussing the broad ramifications of any ruling on the merits of Tuteur's Section 512(f) claim. In enacting the DMCA, Congress created a complex statutory scheme that balances the interests of copyright owners and Internet users. Section 512(f) is a key provision within the statute that protects users from improper takedown notices. Dismissal of Tuteur's claim would leave users vulnerable to private censorship. The impact of this case on Internet users in general is an important issue that would likely not be briefed without the participation of EFF and DMLP as *amici curiae*.

The views of an *amicus* may align with those of one of the parties. *Concerned Area Residents for the Env't v. Southview Farm,* 834 F. Supp. 1410, 1413 (W.D.N.Y. 1993) (quoting

*Hoptowit v. Ray,* 682 F.2d 1237, 1260 (9th Cir. 1982)) ("[T]here is no rule . . . that amici must be totally disinterested."). Indeed, in the origins of amicus briefing, an interest was mandatory: the United States Supreme Court established a criteria for amici needing to be "interested in some other pending case involving similar questions." *Northern Securities Co. v. U.S.*, 191 U.S. 555, 24 S.Ct. 119, 48 L.Ed. 299 (1903) (rejecting brief because, inter alia, there was no such interest).[1] Moreover, although "[a]n amicus . . . is not a party to the litigation and participates only to assist the court[, n]evertheless, 'by the nature of things an amicus is not normally impartial' . . . and 'there is no rule . . . that amici must be totally disinterested.'" *Waste Mgmt., Inc. v. City of York*, 162 F.R.D. 34, 36 (M.D. Pa. 1995) (quoting *United States v. Gotti*, 755 F.Supp. 1157, 1158 (E.D.N.Y. 1991) and *Concerned Area Residents for the Env't v. Southview Farm*, 834 F.Supp. at 1413.

For these reasons, EFF and DMLP respectfully request that the Court grant this motion for leave to file the accompanying *amici curiae* brief.

                                                          Respectfully submitted,

                                                          /s/ Christopher T. Bavitz
                                                          Christopher T. Bavitz (BBO# 672200)
                                                          cbavitz@cyber.law.harvard.edu
                                                          CYBERLAW CLINIC
                                                          Harvard Law School
                                                          Berkman Center for Internet & Society
                                                          23 Everett Street, 2nd Floor
                                                          Cambridge, MA 02138
                                                          Telephone:  (617) 495-7547
Dated:  May 1, 2013                         Facsimile: (617) 495-7641

---

[1] Nor does an *amicus* need to show that a party is incompetently represented in order to participate. *Neonatology Assocs.*, 293 F.3d at 132 ("Even when a party is very well represented, an amicus may provide important assistance to the court.").

4

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1**

Counsel for *amici curiae* EFF and DMLP communicated with counsel for plaintiff Amy Tuteur and defendant Gina Crosely-Corcoran in an effort to resolve or narrow the issues contained in the present motion. Plaintiff's counsel indicated that plaintiff assents to this motion; defendant's counsel indicated that defendant does not assent to this motion.

/s/ Christopher T. Bavitz
Christopher T. Bavitz (BBO# 672200)

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified in the Notice of Electronic Filing and paper or electronic copies will be delivered to those indicated as non-registered participants on May 1, 2013.

/s/ Christopher T. Bavitz
Christopher T. Bavitz (BBO# 672200)