UNITED STATES DISTRICT COURT
FOR THE DISTRICT COURT OF MASSACHUSETTS

| | |
|---|---|
| AMY TUTEUR, M.D., <br><br> Plaintiff, <br><br> v. <br><br> GINA CROSLEY-CORCORAN, <br><br> Defendant. | Civil Action No.: 13-cv-10159-RGS |

**PLAINTIFF'S REPLY IN SUPPORT OF HER
MEMORANDUM OF LAW TO SHOW CAUSE**

Defendant Crosley-Corcoran's Response to Plaintiff's Memorandum of Law To Show Cause (Dkt. # 39, "Defendant's Response") purports to feature a compelling story about how Dr. Tuteur's webhosts (Bluehost.com and DaringHost) never actually removed or disabled any access to materials on her website (*The Skeptical OB*) – and "certainly" did not do so "in response to Crosley-Corcoran's DMCA takedown notices . . . ." Defendant's Response, p. 5. Needless to say, all of these allegations – falling, as they do, outside the pleadings – are out of bounds at the motion to dismiss stage, and Defendant knows it. Defendant's Response, p. 6 n.2. But worse still, like many of the most compelling stories, Defendant's tale is simply a work of fiction.

In this brief reply, Dr. Tuteur responds to Defendant's factual allegations by referencing just two original documents (among many others that exist) that flatly refute Defendant's assertions. Dr. Tuteur does so not to prove at this stage that she is right and Defendant is wrong, but merely to show that there can be no question that there are sufficient facts alleged to overcome a motion to dismiss. In short, Dr. Tuteur's Complaint states a claim, and Defendant should be required to file an Answer.

1

## I. DEFENDANT'S ASSERTIONS ABOUT DR. TUTEUR'S WEBHOSTS ARE BASELESS

Defendant's story that neither Bluehost.com nor DaringHost took any action in response to Defendant's takedown notices is the centerpiece of Defendant's Response, and serves as the basis for her contention that Dr. Tuteur's Complaint should be dismissed based on an alleged failure to satisfy an element of Dr. Tuteur's Section 512(f) claim. Defendant's Response, pp. 1-5. Defendant goes so far as to variously characterize Dr. Tuteur's allegations as "misleading (at best)," "a knowing misstatement of fact," and even "blatant misrepresentations." *Id.* at 1, 4, 5.

### A. *Bluehost.com Deactivated The Skeptical OB*

With regard to Dr. Tuteur's first webhost – Bluehost.com – Defendant contends that Bluehost.com never "removed or disabled access to any materials on [Dr. Tuteur's] site at all . . . ." *Id.* p. 5. This contention is false.

In fact, on December 21, 2012 – four days after Defendant sent her First Takedown Notice – Bluehost.com deactivated *The Skeptical OB*. Further, in an email from Bluehost.com dated December 21, 2012 (a copy of which is attached hereto as Exhibit A), Bluehost.com informed Dr. Tuteur that her site was taken down in response to Defendant's First Takedown Notice:

> Your web hosting account for skepticalob.com has been **deactivated**, as of 12/21/2012. (reason: terms of service violation - **copyright violation**)
>
> This deactivation was due to a Terms of Service violation associated with your account. At sign-up, all users state that they have read through, understand, and agree to our terms. These terms are legal and binding.
>
> Although your web site has been suspended, your data may still be available for up to 15 days from the date of deactivation; if you do not contact us during that 15 day period, your account and all of its files, databases, and emails may be deleted.

Exhibit A (emphasis added).

Defendant's contention that Bluehost.com took no action in response to her First Takedown Notice is, therefore, untrue.

### B. DaringHost Terminated The Skeptical OB In Response To Defendant's Takedown Notice

With respect to DaringHost, Defendant similarly contends that Dr. Tuteur's webhost did not take any action in response to Defendant's takedown notice, but that "the decision to ask Tuteur to move her website was unrelated to the DMCA takedown notices themselves." Defendant's Response, p. 5. In support of her argument, Defendant relies upon the affidavit of DaringHost's owner, Nick Esposito. In his affidavit – which was presumably prepared with the assistance of Defendant's attorney – Mr. Esposito avers that his "request that Amy Tuteur move her blog to another web hosting company was <u>not</u> because [Defendant] had filed a DMCA takedown notice." Esposito Aff. ¶ 5 (emphasis original).[1]

Yet on January 25, 2013 – only four days after Defendant sent a takedown notice to DaringHost – Mr. Esposito sent an email to Dr. Tuteur that left no doubt about the reason he was terminating Dr. Tuteur's website:

> I spoke with the lawyer I've used with my businesses earlier today about the situation with your website and *it being targeted*. He informed me that hosting your website is a *liability on a few different levels* which is a risk to my business. While I support your cause and understand the situation you are in, I will no longer be able to host your website *due to the risk and liability* it poses to my business.

A copy of Mr. Esposito's email is attached hereto as <u>Exhibit B</u> (emphasis added).

---

[1] Instructively, even if Mr. Esposito's new position were true, it would simply highlight that the Defendant was successful in her plan to ensure that "no host in their right mind" would continue to host Dr. Tuteur's website. Complaint, ¶ 59. Thus, to the extent that Mr. Esposito can be believed, Count II (Tortious Interference With Contracts) is further supported by conduct outside the scope of any DMCA takedown notice, and Tuteur requests an opportunity to amend Count II of her Complaint to expand the conduct upon which she relies in support of that claim.

Mr. Esposito then provided a list of alternate webhosts that are "better in terms of dealing with [*The Skeptical OB*] being targeted," *id.,* and specifically, less willing to yield to false DMCA takedown notices:

> The first host I've found is called Alibabahost.com. On their website they state "AlibabaHost provides freedom of content and speech. ***Regarding the DMCA complains [sic], we forward them to you and you decide how to proceed next***." Their web hosting plans start at $6 per month and their VPS plans start at $16.

*Id.* (emphasis added).

Mr. Esposito's second recommendation focused on that host's ability "to host freedom of speech web sites." *Id.* Indeed, Mr. Esposito's "personal suggestion" was that Dr. Tuteur use a webhost located in Iceland, noting that "Iceland has recently passed a law that allows for freedom of information, speech, and expression." *Id.* Notably, **none** of the webhosts Mr. Esposito recommended to Dr. Tuteur were cited as being better able to handle high traffic or hacking, the two principal reasons he now cites for terminating DaringHost's relationship with Dr. Tuteur.

Based on Mr. Esposito's January 25th email to Dr. Tuteur (as well as other communications with Mr. Esposito), Dr. Tuteur alleged in her complaint that "[u]pon information and belief, DaringHost's decision [to cease hosting *The Skeptical OB*] was based on the DMCA notices sent by Crosley-Corcoran and Crosley-Corcoran's planned interference with Dr. Amy's relationship with DaringHost." Complaint, ¶ 61. Accordingly, Defendant's assertion that Dr. Tuteur's allegation in this regard "lacks any good faith basis, and at worst is a knowing misstatement of fact" is both reckless and false. Defendant's Response, p. 5.

### C. *The Complaint Properly Alleges That Dr. Tuteur's Webhosts Removed Content In Response To Defendant's Takedown Notices*

Just as there is no factual support for Defendant's argument that Dr. Tuteur attempted to

4

mislead this Court, there is no merit to Defendant's argument that the Complaint lacks an allegation (intentionally or otherwise) that Dr. Tuteur's webhosts actually removed her content. Specifically, Defendant asserts that Dr. Tuteur "does not directly allege that either of her two webhosts . . . actually took down her blog or even that they took down the photograph of Ms. Crosley-Corcora [sic] that [Dr. Tuteur] posted on her blog." Defendant's Response, p. 3. Defendant's argument is wrong: On the second page of her Complaint, Dr. Tuteur alleges that "Crosley-Corcoran escalated the controversy by issuing serial takedown notices *compelling Dr. Amy's online service providers to remove the photo under the terms of the DMCA*." Complaint, ¶ 3 (emphasis added). In addition, the Complaint contains numerous allegations that Dr. Tuteur's damages are directly attributable to Defendant's fraudulent takedown notices and Dr. Tuteur's webhosts' reliance upon them. Complaint, ¶¶ 3, 5, 36-38, 48, 50, 51, 61, 69, 70, 73, 75-77, and 79; *see Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*, 790 F. Supp. 2d 1024, 1029 (N.D. Cal. 2011) (stating that "a § 512(f) plaintiff's damages must be proximately caused by the *misrepresentation to the service provider and the service provider's reliance on the misrepresentation*."), quoting *Lenz v. Universal Music Corp.*, 2010 WL 702466, *10 (N.D. Cal. Feb. 25, 2010) (emphasis original).

## II. ANY DISPOSITIVE RULING AT THIS STAGE WOULD BE PREMATURE

Dr. Tuteur's reference to emails that contradict Defendant's factual assertions is not an effort to convert this to a summary judgment proceeding. Rather, the emails from Dr. Tuteur's webhosts serve to illustrate that discovery is warranted, as there are many facts in dispute and that dismissal at this stage would be premature. *See, e.g., Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 45 (1st Cir. 2002) (noting that, in ruling upon a motion to dismiss for lack of jurisdiction, "there are many disputed, and as of yet unresolved, facts. We

5

do not resolve these disputed facts" at this early stage of the proceedings).[2]

As for the remainder of Defendant's arguments, Dr. Tuteur relies upon her Memorandum Of Law To Show Cause Why The Complaint Should Not Be Dismissed (Dkt. # 34). In this regard, Dr. Tuteur already anticipated Defendant's reliance on *Rossi v. MPAA*, 391F.3d 1000 (9th Cir. 2004) (Defendant's Response, pp. 6-9). *See* Dr. Tuteur's Memorandum, p. 11 n.8. Since Dr. Tuteur alleges that Defendant had "actual subjective knowledge" that there was no infringement, *Rossi* does not support Defendant's position. Complaint, ¶ 67. Dr. Tuteur also refers the Court to the *amici curiae* brief filed by the Electronic Frontier Foundation and Digital Media Law Project (Dkt. # 35) for in-depth analysis of Section 512(f).[3]

## CONCLUSION

For the reasons stated above, this Court should rule that there is good cause for Dr. Tuteur's action to proceed, as her claims are well-founded and properly pled, and because this Court has personal jurisdiction over Ms. Crosley-Corcoran.

---

[2] Although Defendant almost dares this Court to convert this show cause proceeding into a motion for summary judgment, conversion to a summary judgment proceeding at this stage without notice would be improper. *See Giragosian v. Ryan*, 547 F.3d 59, 65 (1st Cir. 2008) (ruling that "[b]efore such a conversion occurs, however, parties must have a reasonable opportunity to present all material made pertinent to such a motion. Conversion is improper if it would come as a surprise or be unfair to the party against whom judgment is rendered.") (citations and quotations omitted). In any event, even the few documents cited in this Reply demonstrate beyond argument that factual disputes exist precluding summary judgment. Further, the issues in this case have significant, far-reaching consequences; as a result, while Dr. Tuteur does not believe that there are any deficiencies in the allegations in the Complaint, any perceived technical pleading deficiencies should be addressed through amendment, not dismissal.

[3] Defendant strenuously opposed (Dkt. # 36) the request by the Electronic Frontier Foundation and Digital Media Law Project to file a brief as *amici curiae* on the basis that such briefs should not, as a general matter, be filed in a district court case. When the shoe was on the other foot, however, and the MPAA sought to file an *amicus* brief favorable to the Defendant's defense, Defendant abandoned her position without explanation and assented to the MPAA's request (Dkt. # 41). Now that Defendant is content to allow at least one "Goliath" to file its brief, Dr. Tuteur respectfully requests that the Court grant leave to all the *amici* to file their briefs.

Respectfully submitted,


                                            */s/ Stephen Riden*
                                            Russell Beck (BBO # 561031)
                                              *rbeck@beckreed.com*
                                            Stephen D. Riden (BBO # 644451)
                                              *sriden@beckreed.com*
                                            BECK REED RIDEN LLP
                                            155 Federal Street, Suite 1302
                                            Boston, MA 02110
                                            Telephone:  (617) 500-8660
                                            Facsimile:  (617) 500-8665
Dated:  May 14, 2013


# CERTIFICATE OF SERVICE

    I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified in the Notice of Electronic Filing and paper or electronic copies will be delivered to those indicated as non-registered participants on May 14, 2013.

                                            */s/ Stephen D. Riden*
                                            Stephen D. Riden